IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. AP-75,267






EX PARTE SHANNON MARK DOUTHIT, Applicant






ON APPLICATION FOR WRIT OF HABEAS CORPUS


IN CAUSE NO. 2076-A IN THE 83
RD


JUDICIAL DISTRICT COURT OF PRESIDIO COUNTY





 Price, J., filed a dissenting opinion in which Holcomb, J., joined.


DISSENTING OPINION 



 In Ex parte Banks, we recognized that habeas corpus is available to review
jurisdictional, constitutional, and fundamental defects. (1) Today the majority essentially reads
the Legislature out of the process of defining one of these categories, "fundamental" defects. 
In the Court's view, "fundamental" has apparently become merely redundant of
"jurisdictional" or "constitutional." For the reasons that follow, I respectfully dissent.

 At the time the applicant pled guilty in exchange for a life sentence in this capital
murder case, Articles 1.13 and 1.14 of the Texas Code of Criminal Procedure prohibited
capital defendants from waiving jury trials. (2) The prohibition applied regardless of whether
the State was actually seeking the death penalty. This represented a legislative judgment that
all capital defendants should be tried by a jury, never the court. The requirement, by its
terms, was not subject even to express waiver, much less forfeiture. It was, under the rubric
of Marin v. State, an "absolute" or "fundamental systemic" requirement of the system, not
optional with the parties. (3) The Legislature chose to forbid bench trials in capital murder
cases even if both the defendant and the State should expressly consent. Accordingly, in
cases in which a trial court allowed a capital defendant to proceed to judgment without a jury
verdict under the prior statutory regime, this Court has always in the past respected the
Legislative judgment that such an attempted waiver has no effect and has granted relief in
post-conviction habeas corpus proceedings. (4)

 Today the Court declares that such a claim will no longer be regarded as cognizable
in post-conviction habeas proceedings. As I understand it, because in the Court's view the
requirement is only statutory and only procedural, it cannot be regarded as fundamental. I
cannot subscribe to this view.

 This Court's power to issue the writ of habeas corpus is subject to legislative
regulation. (5) The Legislature has prescribed the procedure to be followed in post-conviction
writs of habeas corpus in both non-capital felony cases and in capital cases. (6) So far as I am
aware, the Legislature has thus far left the question of what is cognizable in a post-conviction
writ of habeas corpus to this Court's interpretation. But the Legislature has not abdicated its
authority to enact "fundamental" requirements by statute. This is not to say that any and
every mandatory criminal procedural statute will invariably set up an absolute or fundamental
feature of the system, not optional with the parties, and therefore cognizable in post-conviction habeas corpus proceedings-far from it, as our more recent case law has made
clear. (7) But when the Legislature enacts a statute that expressly makes a requirement
nonwaivable, it has clearly and unmistakably identified a fundamental feature of the system,
which no interest in the finality or repose of judgments should be thought to overcome. (8)

 In former Articles 1.13 and 1.14, the Legislature could not have been more clear in
manifesting its intention that any capital murder case be tried to a jury, regardless of the
wishes of the litigants. They were, in this regard, more than "mandatory" statutes. They
were unequivocal expressions of an indispensable feature of the system. In Marin we made
it clear that such an absolute requirement should be subject to vindication in any available
post-conviction proceeding, whether on direct appeal or in an initial application for writ of
habeas corpus, irrespective of ordinary principles of waiver or procedural default.

 The cases that the Court relies upon today are distinguishable. In Ex parte Sadberry, (9)
we rejected a claim under Article 1.13 that a non-capital felony conviction was "void," and
therefore cognizable in a post-conviction writ application, because the applicant had not
waived his right to a jury trial in writing. We noted that the writing requirement was strictly
a creature of statute, and that there was no claim the applicant had not, in fact, validly waived
his right to a jury consistent with constitutional mandates. This holding was not surprising
or anomalous. Though the statutory requirement of Article 1.13 that a jury waiver be in
writing is a mandatory one, the statute does not identify the writing requirement as a feature
of the system that the parties may not agree to dispense with, either by consent or forfeiture. 
The same can be said of the statutory provision at issue in Ex parte McCain. (10) The right at
issue there was the right, embodied in Article 1.13(c), of an indigent non-capital defendant
to have an attorney appointed and present before he waives his right to a jury trial. The Court
held that this right, too, was not cognizable in post-conviction habeas corpus,
notwithstanding the mandatory language of the provision. But this statutory provision, like
the one in issue in Sadberry mandating that a jury waiver be made in writing, is not nearly
as clearly marked as an absolute and indispensable feature of the system as the core (albeit
statutory) requirement of a jury trial in capital cases at issue today.

 If the applicant's claim does not constitute a legislatively recognized "fundamental"
defect, cognizable in post-conviction habeas corpus proceedings, it is hard to imagine any
legislative mandate that ever could. The Court has seemingly excluded the Legislature from
the process of defining "absolute requirements or prohibitions" (less than jurisdictional), and
thus taken it out of our habeas corpus jurisprudence altogether. I would hold that the
applicant's claim remains cognizable in a post-conviction application for writ of habeas
corpus, and grant relief. Because the Court does not, I respectfully dissent.


Filed: May 23, 2007

Publish
1. 769 S.W.2d 539, 540 (Tex. Crim. App. 1989).
2. Both statutes were amended in 1991 to abolish the prohibition as it applies to capital cases
in which the State waives the death penalty. See Acts 1991, ch. 652, §§ 1 & 2, eff. Sept. 1, 1991.
3. 851 S.W.2d 275, 279-80 (Tex. Crim. App. 1993).
4. Ex parte Dowden, 580 S.W.2d 364 (Tex. Crim. App. 1979); Ex parte Jackson, 606 S.W.2d
934 (Tex. Crim. App. 1980); Ex parte Bailey, 626 S.W.2d 741 (Tex. Crim. App. 1981).
5. Tex. Const. art. V, § 5.
6. See Tex. Code Crim.Proc. arts. 11.07 & 11.071, respectively.
7. See, e.g., Ex parte McCain, 67 S.W.3d 204, 209 (Tex. Crim. App. 2002) ("[T]his Court has
repeatedly held that procedural errors or irregularities or deviations from 'mandatory' statutes are
not cognizable on a writ of habeas corpus.").
8. By this I mean that, so long as the Legislature has prescribed a forum for review, such as
direct appeal or an initial application for habeas relief, such absolute requirements should be subject
to vindication. See Marin v. State, supra, at 278; Ex parte Blue, ___ S.W.3d ___ (Tex. Crim. App.,
No. AP-75,254) (2007 Tex. Crim. App. LEXIS 318) (Slip op. at *6). I do not mean to suggest that
such a claim would necessarily be cognizable in a subsequent habeas corpus application if it did not
meet the criteria of Article 11.07, Section 4 in a non-capital felony, or Article 11.071, Section 5, in
a capital case.
9. 864 S.W.2d 541 (Tex. Crim. App. 1993).
10. 67 S.W.3d 204 (Tex. Crim. App. 2002).